## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| **IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION**<br><br>This document relates to:<br><br>*Fuller v. Syngenta AG et al.*,<br>No. 3:21-pq-00836-NJR | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:21-md-3004-NJR<br><br>MDL No. 3004<br><br>Hon. Judge Nancy J. Rosenstengel |

## DEFENDANTS SYNGENTA CROP PROTECTION, LLC AND SYNGENTA AG'S ANSWER AND DEFENSES

Defendants Syngenta Crop Protection, LLC and Syngenta AG (collectively, "Syngenta"), through undersigned counsel, answers the correspondingly numbered paragraphs of the Complaint of Plaintiff Keith Fuller as follows:

## ANSWER

### Nature of the Case[1]

1.      This case arises out of Defendants' wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, and sale of paraquat dichloride, also known as paraquat methosulfate ("Paraquat"), the active ingredient in herbicide products that cause Parkinson's disease and renal disease. As such, Paraquat is dangerous to human health and unfit to be marketed and sold in commerce, particularly without proper warnings and directions as to the dangers associated with its use. Plaintiff was

---

[1]     Headings from the Complaint are restated here only for ease of reference and are not incorporated herein.

exposed to Paraquat for a sustained period of time and suffered permanent physical injury as a result thereof.

**ANSWER:**   To the extent that Plaintiff alleges physical injury, Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.  To all else, denied.

### Parties

2.     Plaintiff is a natural person and at all relevant times was a resident and citizen of the State of Illinois. Plaintiff brings this action for personal injuries sustained by exposure to the active ingredient Paraquat in Defendants' Paraquat products.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to Plaintiff's residence and citizenship, and denies those allegations. Syngenta denies the remaining allegations.

3.     Defendant Syngenta Crop Protection, LLC ("SCP") is a Delaware limited liability company with its principal place of business in at 410 South Swing Road, Greensboro, North Carolina 27409-2012. SCP is a subsidiary of Syngenta Seeds.

**ANSWER:**   Admitted.

4.     SCP advertises, promotes, markets, sells, and distributes Paraquat and other herbicides and pesticides to distributors, dealers, applicators, and farmers, including in the State of Illinois.

**ANSWER:**   Syngenta admits that, since approximately 2011, SCPLLC has transacted business in Illinois, including by marketing, advertising, selling, distributing, and delivering products containing paraquat and certain other pesticides to distributors, cooperatives, and local dealers in certain parts of Illinois. Syngenta further admits that it has registrations for paraquat and other

2

pesticides with the Environmental Protection Agency (EPA) and the Illinois Department of Agriculture.  To the extent not specifically admitted herein, denied.

5.      Defendant Syngenta AG is a corporation organized and existing under the laws of Switzerland with its principal place of business at Schwarzwaldallee 215, 4058 Basel-Stadt, Switzerland. Syngenta AG was formed in 2000 as a result of the merger of Novartis Agribusiness and Zeneca Agrochemicals. Syngenta AG was a publicly traded company on the Swiss stock exchange; American Depositary Receipts for Syngenta AG were traded on the New York Stock Exchange until it was acquired by ChemChina, a Chinese state-owned entity, in 2017. It has since been de-listed. On information and belief, Syngenta AG continues to operate as a separate unit of ChemChina. Syngenta AG wholly owns, through its ownership of Syngenta Seeds, SCP.

**ANSWER:**    Syngenta admits that SAG is a corporation organized and existing under the laws of Switzerland with its principal place of business at Rosentalstrasse 67, 4058 Basel-Stadt, Switzerland.  Syngenta admits that SAG was formed in 2000 as a result of the demerger of the Novartis agribusiness from Novartis AG and of the Zeneca agrochemicals business from AstraZeneca PLC, and the combination of those businesses into SAG. Syngenta admits that SAG was a publicly traded company on the Swiss stock exchange, and that American Depositary Receipts for SAG were traded on the New York Stock Exchange, but that it has been de-listed from both exchanges.  Syngenta admits that the ultimate parent of SAG is Sinochem Holdings. Syngenta admits that SCPLLC is owned by Syngenta Seeds, LLC, which is owned by Syngenta Corporation, which is owned by Syngenta Crop Protection AG, which is owned by SAG.  To the extent not specifically admitted herein, denied.

6.     Syngenta AG represents itself as a global company. According to Syngenta's website, Syngenta AG's Board of Directors "has full and effective control of the company and holds ultimate responsibility for the company strategy."

**ANSWER:**     To the extent the allegation purports to quote a written document, that document speaks for itself and no response is due. To the extent the allegation purports to characterize that written document, the allegation is denied.

7.     One or more members of Syngenta AG's Board of Directors or the Executive Committee established by the Board of Directors also serve as member(s) of the Board of Directors of SCP and/or Syngenta Seeds.

**ANSWER:**     Syngenta denies the allegations.

8.     Syngenta AG's Executive Committee formulates and coordinates the global strategy for Syngenta businesses, and maintains central corporate policies requiring Syngenta subsidiaries, including SCP, to operate under the general guidance of the Syngenta group control.

**ANSWER:**     Syngenta admits that from time to time SCPLLC consults with and seeks advice or support from individuals or governance bodies located in one of its direct or indirect parent companies with regard to certain matters—consistent with corporate law, appropriate corporate-governance practices, and sound management practices broadly followed by U.S.-headquartered and foreign-headquartered corporations—but states that SCPLLC is responsible for making its own business decisions.  To the extent not specifically admitted herein, denied.

9.     Employees of the Syngenta group as a whole maintain reporting relationships that are not defined by legal, corporate relationships, but in fact cross those corporate lines.

**ANSWER:**     Syngenta denies the allegations.

10.     SCP is subject to additional oversight that requires it to seek approval for certain decisions from higher levels within the functional reporting structure -- including, in some instances, Syngenta AG. SCP's appointments of senior management personnel also may require, in some instances, approval from individuals or governing bodies that are higher than SCP's board of directors.

**ANSWER:**     Syngenta admits that from time to time SCP consults with and seeks advice or support from individuals or governance bodies located in one of its direct or indirect parent companies with regard to certain matters and with regard to the appointment of the Regional Directors-North America and managers reporting directly to them—consistent with corporate law, appropriate corporate-governance practices, and sound management practices broadly followed by U.S.-headquartered and foreign-headquartered corporations—but states that SCP is responsible for making its own business decisions and for appointing its own managers.  To the extent not specifically admitted herein, denied.

11.     Also, Syngenta AG maintains a central global finance function that governs SCP, which requires SCP to function under the Syngenta AG umbrella and not independently.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

12.     In addition, SCP regularly refers to itself as "Syngenta," with no further description.

**ANSWER:**     Syngenta admits that at certain times and in certain contexts, SCPLLC has referred to itself as "Syngenta."  To the extent not specifically admitted herein, denied.

13.     Chevron U.S.A., Inc. ("CUSA") is a Pennsylvania corporation with its principal place of business in San Ramon, California.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

## Jurisdiction and Venue

14.     This Court has personal jurisdiction over SCP because SCP transacts business in the Southern District of Illinois and is a corporation doing business within the Southern District of Illinois. SCP knows that its Paraquat products are and were sold throughout the State of Illinois. In addition, SCP maintains sufficient contacts with the State of Illinois such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice. Specific to this case, SCP engaged in the business of developing, manufacturing, testing, packaging, marketing, distributing, and labeling pesticides containing Paraquat in Illinois, and making a lawsuit by a person injured by Paraquat in Illinois foreseeable. SCP purposefully availed itself of the privilege of conducting activities within this District, thus invoking the benefits and protections of its laws.

**ANSWER:**   This paragraph calls for a legal conclusion to which no response is due. To the extent a response is due, Syngenta states that it is not contesting personal jurisdiction for purposes of this specific Plaintiff's claims. Pursuant to CMO Nos. 8 & 12, Syngenta reserves its personal jurisdiction, Lexecon, and venue-related objections for cases that have not been selected as bellwether plaintiffs.

15.     This Court has personal jurisdiction over Syngenta AG because, for the reasons alleged above, the jurisdictional contacts of SCP in this state are attributable to Syngenta AG because of the unusually high degree of control Syngenta AG exercises over these subsidiaries. In addition, on information and belief, Syngenta AG and SCP acted in concert under agreements or other arrangements to act in a collective manner and/or as joint venturers regarding the actions and

6

events made the subject of this Complaint. Syngenta AG and SCP are therefore jointly and severally liable for the acts for which the Plaintiff complains.

**ANSWER:**   This paragraph calls for a legal conclusion to which no response is due. To the extent a response is due, Syngenta states that it is not contesting personal jurisdiction for purposes of this specific Plaintiff's claims. Pursuant to CMO Nos. 8 & 12, Syngenta reserves its personal jurisdiction, Lexecon, and venue-related objections for cases that have not been selected as bellwether plaintiffs.

16.    In 2011, the U.S. District Court for the Southern District of Illinois held that Syngenta AG's unusually high degree of control made Syngenta Crop Protection the agent or alter ego of Syngenta AG and therefore subjected Syngenta AG to jurisdiction in the State of Illinois. See City of Greenville, Ill. v. Syngenta Crop Prot., Inc., 830 F. Supp. 2d 550 (S.D. Ill. 2011).

**ANSWER:**   This paragraph contains legal conclusions, specifically alleged conclusions from the federal court opinion cited, to which no response is due. To the extent a response is required, Syngenta admits that the United States District Court for the Southern District of Illinois, in *City of Greenville, Ill. v. Syngenta Crop Protection, Inc.* (Case No. 3:10-cv-00188), denied a motion filed by SAG to dismiss for lack of personal jurisdiction based on the allegations in that case, and issued a Memorandum and Order at 830 F. Supp. 2d 550 (S.D. Ill. 2011). Syngenta denies the legal conclusions and findings contained in that Memorandum and Order as incorrect and erroneous but, since that lawsuit was settled, did not have any opportunity to challenge the Memorandum and Order's conclusions and findings on appeal. To the extent not specifically admitted herein, denied.

17.    This Court has personal jurisdiction over CUSA because CUSA advertises and sells goods, specifically pesticides containing Paraquat, throughout this District of Illinois. It derived substantial revenue from goods and products used in this District. It expected its acts to have

consequences within the State of Illinois, including the foreseeable possibility of a lawsuit by a person injured by Paraquat in Illinois, and derived substantial revenue from interstate commerce. CUSA purposefully availed itself of the privilege of conducting activities within the State of Illinois, thus invoking the benefits and protections of its laws.

**ANSWER:**    This paragraph calls for a legal conclusion to which no response is due. To the extent a response is due, Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because Plaintiff was exposed to Paraquat in Williamson County, Illinois.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due. To the extent a response is due, Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

### Tolling of Applicable Statute of Limitations
### Discovery Rule Tolling

19.     Plaintiff did not know and had no way of knowing about the risk of serious illness associated with exposure to Paraquat until approximately March 2021.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

20.     Within the time period of any applicable statutes of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to Paraquat is injurious to human health.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due. To the extent a response is due, Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

21.   Plaintiff did not discover and did not know the facts that would cause a reasonable person to suspect the risks associated with exposure to Paraquat; nor would a reasonable and diligent investigation by Plaintiff have disclosed that Paraquat would cause or had caused Plaintiff's injuries.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to what Plaintiff discovered or knew, and therefore denies those allegations. The remaining allegations contain legal conclusions to which no response is due. To the extent a response is due, denied.

22.   For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

### Fraudulent Concealment Tolling

23.   All applicable statutes of limitations have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

24.     Instead of disclosing critical safety information about Paraquat, Defendants consistently and falsely represented the safety of Paraquat and those false representations prevented Plaintiff from discovering this claim.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

### Estoppel

25.     Defendants were under a continuous duty to disclose to consumers, users, and other persons coming into contact with its products, including Plaintiff, accurate safety information concerning its products and the risks associated with the use of and/or exposure to Paraquat.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

26.     Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning Paraquat and the serious risks associated with the use of and/or exposure to its products.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

27.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

## Factual Allegations

### Development of Paraquat

28.     The herbicidal properties of Paraquat were discovered by Imperial Chemical Industries PLC ("ICI") in 1955.[2]

**ANSWER:**     Syngenta admits that the herbicidal properties of paraquat were discovered by individuals working at ICI in 1955. To the extent not specifically admitted herein, denied.

29.     ICI developed, researched, manufactured, and tested Paraquat through its Central Toxicology Laboratory in the early 1960s and produced the first chemical paraquat formulation, which it registered in England and introduced in certain markets under the brand name GRAMOXONE®, in 1962.

**ANSWER:**     Syngenta admits that ICI produced the first commercial paraquat formulation and registered it in England in 1962. To the extent not specifically admitted herein, denied.

30.     ICI was awarded a U.S. patent on herbicide formulations containing paraquat as an active ingredient in 1962.

**ANSWER:**     Syngenta denies the allegations.

31.     ICI's Central Toxicology Laboratory performed and submitted the health and safety studies of Paraquat to the United States Department of Agriculture ("USDA") and the United States Environmental Protection Agency ("EPA") to secure and maintain the registration of Paraquat and other pesticides for use in the United States.

---

[2]     Sagar, G.R., Uses and Usefulness of Paraquat, Human Toxicology (1987) 6:1, 7-11.

**ANSWER:**   Syngenta admits that ICI had a Central Toxicology Laboratory that performed and coordinated studies related to paraquat and other pesticides that were submitted to the USDA and EPA.  To the extent not specifically admitted herein, denied.

32.   In or around 1964, ICI entered into a licensing and distribution agreement with Chevron Chemical Company ("Chevron") to sell Paraquat in the United States. Under this ICI-Chevron Agreement, Chevron obtained an exclusive license to the patents and technical information to permit Chevron to formulate or have formulated, use, and sell Paraquat under the trade name GRAMOXONE® and other names in the United States and to sub-license others to do so. Some form of this agreement remained in effect until September 1986 when ICI paid Chevron for the early termination of its rights under the paraquat licensing and distribution agreement.

**ANSWER:**   Syngenta admits that between 1964 and 1986, ICI, ICI-US, and Chevron had a series of licensing agreements that granted Chevron a right to formulate and sell paraquat in the United States.  To the extent not specifically admitted herein, denied.

33.   Through a long series of mergers, spin-offs, and related corporate transactions, ownership of ICI's Central Toxicology Laboratory was transferred to Syngenta Ltd., a wholly owned British subsidiary of Syngenta AG. Since that time, Syngenta Ltd.'s Central Toxicology Laboratory has continued to perform and submit health and safety studies to the EPA to secure and maintain the registration of Paraquat and other pesticides in the United States.

**ANSWER:**   Syngenta admits that after the spinoff and merger that created Syngenta AG, Zeneca Ltd.'s Central Toxicology Laboratory became Syngenta Ltd.'s Central Toxicology Laboratory. Syngenta admits that Syngenta Ltd.'s Central Toxicology Laboratory performed health and safety studies that were submitted to the EPA.  To the extent not specifically admitted herein, denied.

34.     Through the same long series of mergers, spin-offs, and related corporate transactions, ICI's agrochemical business was transferred to SCP.

**ANSWER:**   This paragraph oversimplifies a complex series of transactions and Syngenta therefore denies the allegations.

35.     From approximately September 1986 through the present, Syngenta has:

a.     manufactured Paraquat for use as an active ingredient in herbicides formulated and distributed for sale and use in the United States, including the State of Illinois;

b.     distributed Paraquat for use as an active ingredient in herbicides formulated and distributed for sale and use in the United States, including the State of Illinois;

c.     formulated Paraquat products distributed for sale and use in the United States, including the State of Illinois; and

d.     distributed Paraquat products for sale and use in the United States, including the State of Illinois.

**ANSWER:**   Syngenta admits that Syngenta, Zeneca, or ICI manufactured and sold products containing paraquat in the United States from approximately 1986 to the present. To the extent not specifically admitted, denied.

36.     Syngenta, through SCP, is now the leading manufacturer of Paraquat, which it sells under the brand name GRAMOXONE®.[3]

**ANSWER:**   Syngenta lacks sufficient knowledge or information as to this allegation and therefore denies it.

---

[3]   Press Release, Federal Trade Commission, FTC Requires China National Chemical Corporation and Syngenta AG to Divest U.S. Assets as Condition of Merger (April 4, 2017), https://www.ftc.gov/news- events/press-releases/2017/04/ftc-requires-china-national-chemical-corporation-syngenta-ag.

*Paraquat Use*

37.    Paraquat is designed to kill broadleaf weeds and grasses before the planting or emergence of more than 100 field, fruit, vegetable, and plantation crops, to control weeds in orchards, and to desiccate (dry) plants before harvest.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits that paraquat may be toxic to plants and animals under certain circumstances. To the extent not specifically admitted herein, denied.

38.    Paraquat products are commonly sprayed multiple times per year on the same land, particularly when used to control weeds in orchards or on farms with multiple crops planted on the same land within a single growing season or year, and such use was as intended, directed, or at least foreseeable.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

39.    Paraquat is typically sold by Defendants to end-users in the form of a liquid concentrate (and less commonly in the form of granular solids) designed to be diluted with water before or after loading it into the tank of a sprayer, and applied by spraying it onto target weeds.

**ANSWER:**    Syngenta admits that paraquat is most commonly sold in liquid form and is designed to be diluted.  Syngenta further admits that paraquat is sometimes sold with a recommendation that it be mixed with other liquids.  To the extent not specifically admitted herein, denied.

40.     Paraquat concentrate is formulated with one or more "surfactants" to increase the ability of the herbicide to stay in contact with the leaf, penetrate the leaf's waxy surface, and enter into plant cells, and the accompanying instructions typically told end-users to add a surfactant or crop oil (which typically contains a surfactant) before use.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  To the extent not specifically admitted herein, denied.

41.     Paraquat products are typically applied with a knapsack sprayer, hand-held sprayer, aircraft (i.e., crop duster), truck with a pressurized tank, or tractor-drawn pressurized tank, and such use was as intended, directed, or at least foreseeable.

***Paraquat Exposure***

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

42.     Each year, Paraquat is applied to approximately 15 million acres of agricultural crops, including corn, soybeans, wheat, cotton, fruit and vegetables, rice, orchards and grapes, alfalfa, hay, and other crops. The following map demonstrates the nationwide use of Paraquat in recent years:



USGS, Pesticide National Synthesis Project (2020),
https://water.usgs.gov/nawqa/pnsp/usage/maps/show_map.php?year=2017&map=
PARAQUAT&hilo=L&disp=Paraquat.

**ANSWER:**    The allegations in this paragraph purport to summarize a written text, the content of which speaks for itself and no response is required. To the extent these allegations seek to characterize that written text, such allegations are denied. Syngenta denies the remaining allegations.

43.    At all relevant times, it was reasonably foreseeable that applicators of Paraquat and others nearby would be exposed to it when Paraquat was used in its intended, directed, and/or foreseeable manner, including mixing, loading, spraying, or cleaning.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due. To the extent a response is required, Syngenta denies the allegations.

44.    At all relevant times it was reasonably foreseeable that users and others nearby would be exposed to Paraquat through contact with skin, breathing it in, and/or ingesting it.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

45.    Parkinson's disease is a terrible disease classified as a progressive neurodegenerative disorder of the brain that affects primarily the motor system, the part of the central nervous system that controls movement.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

46.    Parkinson's Disease is now one of the fastest growing neurological condition diagnoses on the planet.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

47.    In a 2018 study by the Parkinson's Project, it is estimated that 1.2 million Americans will have been diagnosed with Parkinson's by the year 2030.[4]

**ANSWER:**    The allegations in this paragraph purport to summarize a written text, the content of which speaks for itself and no response is required. To the extent these allegations seek to characterize that written text, such allegations are denied. Syngenta denies the remaining allegations.

---

[4]    Marras, C., Beck, J.C., Bower, J.H. *et al., Prevalence of Parkinson's disease across North America*, njp Parkinson's Disease 4: 21 (2018). https://doi.org/10.1038/s41531-018-0058-0.

48.     The characteristic symptoms of Parkinson's disease are its "primary" motor symptoms: resting tremor (shaking movement when the muscles are relaxed); bradykinesia (slowness in voluntary movement and reflexes); rigidity (stiffness and resistance to passive movement); and postural instability (impaired balance).

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

49.     Parkinson's primary motor symptoms typically result in "secondary" motor symptoms such as freezing of gait; shrinking handwriting; mask-like expression; slurred, monotonous, quiet voice; stooped posture; muscle spasms; impaired coordination; difficulty swallowing; and excess saliva and drooling caused by reduced swallowing movements.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

50.     Non-motor symptoms are present in most cases, often for years before the primary motor symptoms appear. These non-motor symptoms include, but are not limited to: loss of or altered sense of smell; constipation; low blood pressure on rising to stand; sleep disturbances; and depression.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

51.     There is currently no cure for Parkinson's disease. Existing treatments do not slow or stop its progression; such treatments are capable only of temporarily and partially relieving the motor symptoms. These treatments also have unwelcome side effects the longer they are used.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

52.     One of the primary pathophysiological hallmarks of Parkinson's disease is the selective degeneration and death of dopaminergic neurons (dopamine-producing nerve cells) in a part of the brain called the substantia nigra pars compacta ("SNpc").

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

53.     Dopamine is a neurotransmitter (a chemical messenger that transmits signals from one neuron to another neuron, muscle cell, or gland cell) that is critical to the brain's control of motor function (among other things).

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits dopamine is a neurotransmitter. To the extent not specifically admitted herein, denied.

54.     The death of dopaminergic neurons in the SNpc decreases the production of dopamine.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits that with the loss of dopaminergic neurons, there is a corresponding decrease of dopamine. To the extent not specifically admitted herein, denied.

55.    Once dopaminergic neurons die, the body cannot replace them. When enough dopaminergic neurons die, dopamine production falls below the level the brain requires to properly control motor function, thus resulting in the motor symptoms of Parkinson's disease.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony.  Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits that dopaminergic neurons are not replaced once they die; if enough dopaminergic neurons die, dopamine production may fall below the level the brain requires for proper control of motor function, which may result in motor control symptoms that may be consistent with those found in individuals diagnosed with Parkinson's disease.  To the extent not specifically admitted herein, denied.

56.    The presence of Lewy bodies (insoluble aggregates of a protein called alpha-synuclein) in many of the remaining dopaminergic Neurons in the SNpc is another of the primary pathophysiological hallmarks of Parkinson's disease.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

57.     Dopaminergic neurons are particularly susceptible to oxidative stress, a disturbance in the normal balance between oxidants present in cells and cells' antioxidant defenses.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits that certain scientists have hypothesized that dopaminergic neurons may be damaged by oxidative stress depending on the experimental circumstances. To the extent not specifically admitted herein, denied.

58.     Oxidative stress is a major factor in—if not the precipitating cause of—the degermation and death of dopaminergic neurons in the SNpc and the accumulation of Lewy bodies in the remaining dopaminergic neurons that are the primary pathophysiological hallmarks of Parkinson's disease.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

59.     Paraquat is highly toxic to plants and animals.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits that paraquat may be toxic to plants and animals under certain circumstances. To the extent not specifically admitted herein, denied.

60.     Paraquat is designed to injure and kill plants by creating oxidative stress, which causes or contributes to cause the degeneration and death of plant cells.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

61.     Similarly, Paraquat injures and kills animals by creating oxidative stress, which causes or contributes to cause the degeneration and death of animal cells.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.  The allegations will also be the subject of expert testimony.  Subject to those qualifications, and within the narrow context of this legal filing, Syngenta denies that when used as directed, paraquat injures or kills animals.  Syngenta admits that under certain circumstances if paraquat is misused (if animals drink paraquat, for example), paraquat may injure or kill animals.  To the extent not specifically admitted herein, denied.

62.     Paraquat creates oxidative stress in the cells of plants and animals because of "redox properties" that are inherent in its chemical composition and structure—it is a strong oxidant and readily undergoes "redox cycling" in the presence of molecular oxygen, which is plentiful in living cells.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.  The allegations will also be the subject of expert testimony.  To the extent a response is required, denied.

22

63.     The redox cycling of Paraquat in living cells interferes with cellular functions that are necessary to sustain life—with photosynthesis in plant cells and with cellular respiration in animal cells.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.   The allegations will also be the subject of expert testimony.  Subject to those qualifications, and within the narrow context of this legal filing, and as phrased, admitted.  To the extent not specifically admitted herein, denied.

64.     The redox cycling of Paraquat in living cells creates a "reactive oxygen species" known as a superoxide radical, an extremely reactive molecule that can initiate a cascading series of chemical reactions that creates other reactive oxygen species that damage lipids, proteins, and nucleic acids, which are molecules that are essential components of the structures and functions of living cells.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.   The allegations will also be the subject of expert testimony.  Subject to those qualifications, and within the narrow context of this legal filing, and as phrased, admitted.  To the extent not specifically admitted herein, denied.

65.     Because the redox cycling of Paraquat can repeat indefinitely in the conditions typically present in living cells, a single molecule of Paraquat can trigger the production of countless molecules of destructive superoxide radical.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, and as phrased, denied.

66.     Paraquat's redox properties have been known within the science community since at least the 1930s.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, admitted.

67.     The same oxidation and redox potentials that make Paraquat highly toxic to plant cells and other types of animal cells make Paraquat highly toxic to nerve cells, including dopaminergic neurons, and create a substantial risk to all persons exposed to Paraquat.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, the allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context.  The allegations will also be the subject of expert testimony.  To the extent not specifically admitted herein, denied.

68.     The scientific community has known since the 1960s that paraquat is toxic to the cells of plants, animals, and humans because it creates oxidative stress through redox cycling.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.  The

allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, and as phrased, Syngenta admits that certain scientists have hypothesized that paraquat can have such effects as described in this Paragraph with respect to plants. To the extent not specifically admitted herein, denied.

69.     The surfactants with which the concentrates containing Paraquat manufactured, distributed, and sold by Defendants, Defendants' corporate predecessors, and others with whom they acted in concert were likely to increase Paraquat's toxicity to humans by increasing its ability to stay in contact with or penetrate the skin, mucous membranes, and other epithelial tissues, including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, the lungs, and the gastrointestinal tract.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, and as phrased, denied.

70.     Because Paraquat is highly poisonous, the form that is marketed in the United States has a blue dye to keep it from being confused with beverages such as coffee, a sharp odor to serve as a warning, and an added agent to cause vomiting if someone drinks it.

**ANSWER:**     Syngenta admits that paraquat sold by Syngenta in the United States today has a dye, a stanching agent, and an emetic. To the extent not specifically admitted herein, denied.

71.     Paraquat is a "restricted use pesticide" under federal law, see 40 C.F.R. § 152.175, which means it is "limited to use by or under direct supervision of a certified applicator."

25

**ANSWER:**   Syngenta admits that paraquat is a restricted use pesticide.  The remainder of this paragraph contains legal conclusions to which no response is due. To the extent a response is required, Syngenta admits that Plaintiff accurately quotes a portion of 40 C.F.R. § 152.175, but denies that Plaintiff has completely and accurately explained the terms of this provision.

72.     The same redox properties that make Paraquat toxic to plant cells and other types of animal cells make it toxic to dopaminergic neurons. That is, Paraquat is a strong oxidant that interferes with the function of dopaminergic neurons, damages those neurons, and ultimately kills them by creating oxidative stress through redox cycling.

**ANSWER:**   The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony.  Syngenta therefore denies the allegations.

73.     Although Parkinson's disease is not known to occur naturally in any species other than humans, Parkinson's disease research is often performed using "animal models," in which scientists use Paraquat to artificially produce the symptoms of Parkinson's disease in animal test subjects.

**ANSWER:**   The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.  The allegations will also be the subject of expert testimony.  Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits that Parkinson's disease does not occur in any species other than humans and that researchers have never produced Parkinson's disease in any animals by exposing them to paraquat.  To the extent not specifically admitted herein, denied.

74.     Paraquat is one of only a handful of toxins that scientists use to produce animal models of Parkinson's disease.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits that there are many publicly available studies that have studied the effects of paraquat and other compounds in various animal species, but Parkinson's disease does not occur in any species other than humans and researchers have never produced Parkinson's disease in any animals by exposing them to paraquat. To the extent not specifically admitted herein, denied.

75.     In animal models of Parkinson's disease, hundreds of studies involving various routes of exposure have found that Paraquat creates oxidative stress that results in: the degeneration and death of dopaminergic neurons in the SNpc; other pathophysiology consistent with that seen in human Parkinson's disease; and motor deficits and behavioral changes consistent with those commonly seen in human Parkinson's disease.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.  The allegations will also be the subject of expert testimony.  To the extent not specifically admitted herein, denied.

76.     Hundreds of in vitro studies (experiments in test tube, culture dish, or other controlled experimental environment) have found that Paraquat creates oxidative stress that results in the degeneration and death of dopaminergic neurons (and many other types of animal cells). Among those, the following are notable:

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

77.     In 1994, Dr. Afonso Bainy published a study concluding that paraquat in vitro exposure led to an increment in the anti-oxidant capacity of the red blood cell.[5]

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.  The allegations will also be the subject of expert testimony.  To the extent not specifically admitted herein, denied.

78.     In 2002, Dr. Gabriele Schmuck published a study concluding that cortical neurons were found to be more sensitive towards paraquat toxicity than astrocytes as shown by MTT and Neutral Red assay, two different cytotoxicity assays.[6]

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

79.     In 2019, Dr. Liyan Hou published a study showing that paraquat and maneb exposure induced ferroptosis, a form of regulated cell death, in SHSY5Y dopaminergic cells.[7]

---

[5]     Bainy, AC, *et al, Influence of lindane and paraquat on oxidative stress-related parameters of erythrocytes in vitro*, Human & Experimental Toxicology (1994), 13:7 461-465.

[6]     Schmuck, G, *et al, Oxidative stress in rat cortical neurons and astrocytes induced by paraquat in vitro*. Neurotoxicity Research (2002) 4:1, 1-13.

[7]     Hou L, *et al, NADPH oxidase regulates paraquat and maneb-induced dopaminergic neurodegeneration through ferroptosis*, Toxicology (2019), 1:417 64-73.

**ANSWER:**   The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

80.   Many epidemiological studies (studies of the patterns and causes of disease in defined populations) have found an association between Paraquat exposure and Parkinson's disease, including multiple studies finding a two- to five-fold or greater increase in the risk of Parkinson's disease in populations with occupational exposure to Paraquat compared to populations without such exposure.

**ANSWER:**   The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.  The allegations will also be the subject of expert testimony.  Syngenta denies that paraquat causes Parkinson's disease.  Syngenta further states that numerous epidemiological studies have found no statistically significant association between Parkinson's disease and measures of paraquat exposure.  Syngenta denies that any of the unspecified studies referenced in this paragraph that purport to suggest an association have found a causal relationship between paraquat and Parkinson's disease.  As the authors of such studies frequently acknowledge, they suffer from a number of methodological limitations, including among other things, their ability to reliably measure exposure to paraquat.  To the extent not specifically admitted herein, denied.

81.   In June 2011, Dr. Caroline Tanner published a study examining whether pesticides that cause mitochondrial dysfunction or oxidative stress, including Paraquat, were associated with Parkinson's Disease or clinical features of parkinsonism in humans.[8] The study found that Paraquat

---

[8]   Tanner, Caroline M., et al., *Rotenone, paraquat, and Parkinson's disease*. 119 Environ Health Perspect. 866-872 (2011).

use plays a role in human Parkinson's Disease and that "[b]ecause paraquat remains one of the most widely used herbicide worldwide (Frabotta 2009), this finding potentially has great public health significance."[9]

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. To the extent not specifically admitted herein, denied.

82.     In November 2012, Dr. Samuel Goldman published a study entitled "Genetic Modification of the Association of Paraquat and Parkinson's Disease."[10] The study found that those who applied Paraquat and had the GSTT1*0 genotype were 11.1 times more likely to develop Parkinson's disease. Paraquat damages neurons by generating oxidative stress through redox cycling; the GSTT1 gene encodes an enzyme that prevents redox cycling. Around 20% of Caucasians do not have the GSTT1 gene and thus have the GSTT1*0 genotype. The lack of the GSTT1 gene may cause those with the GSTT1*0 genotype to be more vulnerable to Paraquat's redox cycling mechanism and therefore more likely to develop Parkinson's.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits that certain scientists have

---

[9]     *Id.*

[10]    Samuel M. Goldman et al., *Genetic Modification of the Association of Paraquat and Parkinson's Disease*, 27 Mov't Disord. 1652-1658 (2012).

hypothesized that dopaminergic neurons may be damaged by oxidative stress depending on the experimental circumstances. To the extent not specifically admitted herein, denied.

83.     In July 2002, Dr. Alison McCormack published a study examining the effect of Paraquat on mice.[11] The study found that Paraquat injections selectively kill dopaminergic neurons in the SNpc.

**ANSWER:**     The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony. Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits that certain scientists have hypothesized that dopaminergic neurons may be damaged by oxidative stress depending on the experimental circumstances. To the extent not specifically admitted herein, denied.

84.     Dr. Robert Nisticó published a study in April 2011 that concluded that Paraquat causes the cell death of dopaminergic neurons within the substantia nigra, serotonergic neurons within the raphe nuclei, and noradrenergic neurons within the locus coeruleus.[12] The researchers noted that Parkinson's pathology begins in the SNpc and "progressively involves noradrenergic and serotonergic neurons within the locus coeruleus and raphe nuclei."

**ANSWER:**     The allegations in this paragraph purport to summarize a written text, the content of which speaks for itself and no response is required. To the extent these allegations seek to

---

[11]     Alison L. McCormack et al., *Environmental Risk Factors and Parkinson's Disease: Selective Degeneration of Dopaminergic Neurons Caused by the Herbicide Paraquat* 10 Neurobiol. Dis. 119-127 (2002).

[12]     R. Nisticó et al., *Paraquat- and Rotenone-Induced Models of Parkinson's Disease*, 24 Int. J. Immunopathol. Pharmacol. 313-322 (2011).

characterize that written text, such allegations are denied. Syngenta denies the remaining allegations.

85.     In December 2011, Dr. Phillip Rappold published a study demonstrating how Paraquat entered dopaminergic neurons and killed the neurons through oxidative stress.[13] Paraquat converted to PQ+, which entered dopaminergic neurons through their dopamine transporters. PQ+ then also reacted with dopamine, which enhanced the Paraquat-induced oxidative stress. The researchers argued that dopaminergic neurons are more vulnerable to Paraquat because PQ+ reacts with dopamine to increase oxidative stress.

**ANSWER:**     The allegations in this paragraph purport to summarize a written text, the content of which speaks for itself and no response is required. To the extent these allegations seek to characterize that written text, such allegations are denied. Syngenta denies the remaining allegations.

86.     In November 2012, Dr. Pei-Chen Lee published a study examining the associations between traumatic brain injuries, Paraquat, and Parkinson's disease.[14] The study found an association between Paraquat exposure and Parkinson's.

**ANSWER:**     The allegations in this paragraph purport to summarize a written text, the content of which speaks for itself and no response is required. To the extent these allegations seek to characterize that written text, such allegations are denied. Syngenta denies the remaining allegations.

---

[13]   Phillip M. Rappold et al., *Paraquat Neurotoxicity is Mediated by the Dopamine Transporter and Organic Cation Tranpsorter-3*, 108 Proc. Natl. Acad. Of Sci. U.S.A. 20766-20771 (2011).

[14]   Pie-Chen Lee et al., *Traumatic Brain Injury, Paraquat Exposure, and their Relationship to Parkinson Disease*, 79 Neurology 2061-2066 (2012).

87.     In May 2013, Dr. Gianni Pezzoli published a meta-analysis examining seven studies on Paraquat exposure.[15] The meta-analysis evaluated the seven studies together and separately evaluated the highest quality studies; in both analyses, those exposed to Paraquat were more likely to develop Parkinson's disease.

**ANSWER:**     The allegations in this paragraph purport to summarize a written text, the content of which speaks for itself and no response is required. To the extent these allegations seek to characterize that written text, such allegations are denied. Syngenta denies the remaining allegations.

88.     In a memorandum from March 2, 2016 recommending mitigation measures for Paraquat, the EPA acknowledged the numerous studies linking Paraquat to Parkinson's disease stating, "[t]here is a large body of epidemiology data on paraquat dichloride use and Parkinson's disease."[16]

**ANSWER:**     To the extent a response is required, Syngenta admits that Plaintiff accurately quotes a portion of an EPA memorandum from March 2, 2016, with the exception of replacing "T" with "[t]," but denies that Plaintiff has completely and accurately explained the import of the statement. To the extent not specifically admitted herein, denied.

89.     The kidney is the main organ responsible for paraquat excretion and Paraquat is known to be highly nephrotoxic. Dermal exposure to Paraquat has revealed inflammatory cell

---

[15]   Gianni Pezzoli & Emanuele Cereda, *Exposure to Pesticides or Solvents and Risk of Parkinson Disease*, 80 Neurology 2035-2041 (2013).

[16]   Environmental Protection Agency, Paraquat Dichloride; Proposed Mitigation Decision (March 2, 2016), https://www.regulations.gov/document/EPA-HQ-OPP-2011-0855-0031.

infiltration, tubular necrosis and diffuse interstitial fibrosis.[17] Paraquat causes toxic chemical reactions to occur in the kidneys, and long-term effects, including kidney failure, are possible.[18]

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Subject to those qualifications, and within the narrow context of this legal filing, and as phrased, admitted to the extent that the kidney is the body's main organ responsible for excretion and that under certain conditions acute exposure to paraquat can result in kidney damage if paraquat is misused.  To the extent not specifically admitted herein, denied.

90.    Extensive exposure to Paraquat, like that experienced by Plaintiff, have been shown to more than double the risk of end state renal disease.

**ANSWER:**    Syngenta denies the allegations

91.    Switzerland, where Syngenta AG maintains its headquarters, has not only prohibited the use of Paraquat since 1989 but recently amended the law on chemical substances to prohibit the export of Paraquat to help protect the health and environment in importing countries, particularly in the developing world.[19]

---

[17]    Tungsanga K, Chusilp S, Israsena S, Sitprija V. Paraquat poisoning: evidence of systemic toxicity after dermal exposure. Postgrad Med J 1983; 59(691):338-9.dd

[18]    17 Centers for Disease Control and Prevention, Facts About Paraquat, https://emergency.cdc.gov/agent/paraquat/basics/facts.asp.

[19]    *Switzerland bans the export of five toxic chemicals, including paraquat*, MercoPress (October 16, 2020 09:20 UTC), https://en.mercopress.com/2020/10/16/switzerland-bans-the-export-of-five-toxic-chemicals-including-paraquat.

**ANSWER:**   Syngenta admits that since the end of 1989, paraquat is not registered in Switzerland.  Syngenta admits that since October 2020, the export of paraquat from Switzerland is not permitted. To the extent not specifically admitted herein, denied.

92.   The Ministry of Agriculture of the People's Republic of China classifies Paraquat as extremely toxic. Paraquat's use or sale in China has been prohibited since September 1, 2020.[20]

**ANSWER:**   Syngenta admits that the use of Paraquat in China has been prohibited since September 1, 2020 and that the Ministry of Agriculture of the People's Republic of China classified paraquat as extremely toxic. To the extent not specifically admitted herein, denied.

93.   Paraquat use has been banned in the European Union since 2007.[21]

**ANSWER:**   Syngenta denies the allegations.

94.   The manufacture, formulation, and distribution of herbicides, such as Paraquat, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq. FIFRA requires that all pesticides be registered with the Environmental Protection Agency ("EPA") before their distribution, sale, or use, except as described by FIFRA 7 U.S.C. § 136a(a).

**ANSWER:**   This paragraph contains legal conclusions for which no response is due. To the extent a response is due, Syngenta admits that FIFRA regulates the sale and distribution of

---

[20]   Business Wire, *2018 Market Research on Paraquat in China*, AP, (September 10, 2018), https://apnews.com/press-release/pr-businesswire/0625d4cb368247b38ea803ff3842c203.

[21]   *EU Court Reimposes Ban on Paraquat Weedkiller*, Reuters, July 11, 2007, https://www.reuters.com/article/environment-eu-paraquat-dc/eu-court-reimposes-ban-on-paraquat-weedkiller-idUSL1166680020070711.

herbicides, but denies that Plaintiff has accurately and completely explained the terms and requirements of the Act and other regulatory requirements.

95.     The EPA requires the registrant of a pesticide to conduct a variety of tests as part of the registration process to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

96.     Registration by the EPA is not an assurance or finding of safety. The determination the EPA makes in registering or re-registering a product is not that the product is "safe," but rather that use of the product in accordance with its label directions "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136(a)(c)(5)(D).

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.

97.     FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb). FIFRA thus requires the EPA to make a risk/benefit analysis in determining whether a registration should be granted or allowed to continue to be sold in commerce.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due. To the extent a response is required, Syngenta admits that Plaintiff accurately quotes a portion of 7 U.S.C. § 136(bb), but denies that Plaintiff has completely and accurately explained the terms of this provision.

98.     FIFRA generally requires that the registrant conduct health and safety testing of pesticides. The government is not required to, nor does it generally, perform the product tests that are required of the manufacturer.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.

99.     Syngenta has long misrepresented and denied the harmful side effects of its Paraquat-based products.

**ANSWER:**     Syngenta denies the allegations.

100.     In response to growing concern about the safety of Paraquat, Syngenta established a website at www.paraquat.com for the purpose of persuading the public that Paraquat is safe.

**ANSWER:**     Syngenta admits that it created a website at www.paraquat.com. To the extent not specifically admitted herein, denied.

101.     Syngenta's statements proclaiming the safety of Paraquat and disregarding its dangers were designed to mislead the agricultural community and the public at large, including Plaintiff.

**ANSWER:**     Syngenta denies the allegations.

102.     As of the filing of this Complaint, www.paraquat.com has been taken down by Syngenta.

**ANSWER:**     Syngenta denies the allegations.

103.     Defendants knew or should have known that Paraquat was a highly toxic substance that can cause severe neurological injuries and impairment.

**ANSWER:**     Syngenta denies the allegations.

104.     Defendants failed to appropriately and adequately test its Paraquat-based products to protect individuals like Plaintiff from the hazards of exposure to Paraquat.

**ANSWER:**     Syngenta denies the allegations.

105.     Despite its knowledge that exposure to Paraquat was dangerous, Defendants continued to promote their Paraquat-based products as safe.

**ANSWER:**     Syngenta denies the allegations.

106.     In fact, in 2003, when Syngenta was dealing with lawsuits regarding another toxic herbicide, atrazine, it was reported that "Sherry Ford, the communications manager, wrote in her notebook that the company 'should not phase out [atrazine] until we know about' the Syngenta herbicide Paraquat, which has also been controversial, because of studies showing that it might be associated with Parkinson's disease. She noted that atrazine 'focuses attention away from other products.'"[22]

**ANSWER:**     The allegations in this paragraph purport to summarize a written text, the content of which speaks for itself and no response is required. To the extent these allegations seek to characterize that written text, such allegations are denied. Syngenta denies the remaining allegations.

107.     Defendants' failure to adequately warn Plaintiff resulted in: (1) Plaintiff being exposed to Paraquat; and (2) scientists and physicians failing to warn and instruct the public,

---

[22]     Rachel Aviv, *A Valuable Reputation*, The New Yorker, (Feb 3, 2014), https://www.newyorker.com/magazine/2014/02/10/a-valuable-reputation.

particularly those living in agricultural areas where Paraquat-based pesticides are heavily sprayed, about the risk of Parkinson's disease and renal disease with exposure to Paraquat.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

108.    By reason of the foregoing, Plaintiff is severely and permanently injured.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

109.    By reason of the foregoing acts and omissions, Plaintiff has endured and continues to suffer, emotional and mental anguish, medical expenses, and other economic and non-economic damages, as a result of Defendants' actions and inactions.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

110.    Plaintiff was regularly exposed to Paraquat for approximately 20 years as a result of direct exposure, pesticide drift, and contamination of his drinking water.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

111.    Plaintiff subsequently was diagnosed with Parkinson's Disease in 2019.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

112.    As a result of Plaintiff's injuries, Plaintiff has incurred significant economic and non-economic damages.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

113.   Plaintiff was directly exposed to Defendants' Paraquat products from approximately 1977 to the mid-2000s.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

114.   Plaintiff owns and operates Fuller Fertilizer. Plaintiff maintained an applicator license for Paraquat and applied Paraquat on a yearly basis every Spring from approximately 1977 to the mid-2000s.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

115.   On numerous occasions, Paraquat came into contact with Plaintiff's skin while mixing and spraying Paraquat.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

116.   Additionally, Plaintiff lived in close proximity to fields where Paraquat products were applied. On information and belief, Plaintiff was also exposed to Paraquat that was applied to these fields due to drift.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

117.    During the entire time that Plaintiff was exposed to Paraquat, Plaintiff did not know that exposure to Paraquat when handled according to the instructions could be injurious to himself or others.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

118.    Plaintiff first learned that exposure to Paraquat can cause Parkinson's disease, renal disease, and other serious illnesses sometime after March 2021.

**ANSWER:**    Syngenta denies that paraquat can cause Parkinson's disease, renal disease, or other serious illnesses.  Syngenta lacks sufficient knowledge or information to form a belief as to the remaining allegations, and therefore denies them.

### Count I – Negligence

119.    Plaintiff re-alleges each paragraph above as if fully set forth herein.

**ANSWER:**    Syngenta incorporates its prior responses as if fully restated herein.

120.    Defendants had a duty to exercise ordinary care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of Paraquat products into the stream of commerce, including a duty to assure that the product would not cause those exposed to it to suffer unreasonable and dangerous side effects.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

121.    Defendants failed to exercise ordinary care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, quality assurance, quality control, and/or distribution of Paraquat products in that Defendants knew or should have known

41

that persons foreseeably exposed to Paraquat products were placed at a high risk of suffering unreasonable and dangerous side effects, including, but not limited to, the development of Parkinson's disease or renal disease, as well as other severe and personal injuries that are permanent and lasting in nature; physical pain and mental anguish, including diminished enjoyment of life; and a need for lifelong medical treatment, monitoring, and/or medications.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

122.   The negligence by Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

a.   Manufacturing, producing, promoting, formulating, creating, and/or designing Paraquat products without thoroughly testing it;

b.   Failing to test Paraquat products and/or failing to adequately, sufficiently, and properly test Paraquat products;

c.   Not conducting sufficient testing programs to determine whether Paraquat products were safe for use -- Defendants knew or should have known that Paraquat products were unsafe and unfit for use because of the dangers to those exposed to it;

d.   Not conducting sufficient testing programs and studies to determine Paraquat product's effects on human health even after Defendants had knowledge of studies linking Paraquat products to latent neurological damage and neurodegenerative disease, including Parkinson's disease, and renal disease;

e.   Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and agricultural professions, and the EPA of the dangers of Paraquat products;

f.   Failing to provide adequate cautions and warnings to protect the health of persons who would reasonably and foreseeably be exposed to Paraquat products;

g.   Negligently marketing, advertising, and recommending the use of Paraquat products without sufficient knowledge as to its dangerous propensities;

     h.     Negligently representing that Paraquat products were safe for use for its intended purpose when, in fact, it was unsafe;

     i.     Negligently representing that Paraquat products had equivalent safety and efficacy as other forms of herbicides;

     j.     Negligently designing Paraquat products in a manner that was dangerous to others;

     k.     Negligently manufacturing Paraquat products in a manner that was dangerous to others;

     l.     Negligently producing Paraquat products in a manner that was dangerous to others;

     m.     Negligently formulating Paraquat products in a manner that was dangerous to others;

     n.     Concealing information from the Plaintiff while knowing that Paraquat products were unsafe, dangerous, and/or non-conforming with EPA regulations;

     o.     Improperly concealing and/or misrepresenting information from the Plaintiff, scientific and medical professionals, and/or the EPA, concerning the severity of risks and dangers of Paraquat products compared to other forms of herbicides; and

     p.     Negligently selling Paraquat products with a false and misleading label.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due. To the extent a response is due, denied.

123.    Defendants under-reported, underestimated, and downplayed the serious dangers of Paraquat products.

**ANSWER:**    Syngenta denies the allegation.

124.    Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of Paraquat products in that Defendants:

a.  Failed to use ordinary care in designing and manufacturing Paraquat products so as to avoid the aforementioned risks to individuals when paraquat was used as an herbicide;

b.  Failed to accompany Paraquat products with proper and/or accurate warnings regarding all possible adverse effects associated with exposure to paraquat;

c.  Failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the effects including, but not limited to, developing Parkinson's disease or renal disease;

d.  Failed to conduct adequate testing, clinical testing and post- marketing surveillance to determine the safety of Paraquat products;

e.  Misrepresented the evidence of paraquat's neurotoxicity; and

f.  Was otherwise careless and/or negligent.

**ANSWER:**  This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

125.  Despite the fact that Defendants knew or should have known that Paraquat products caused, or could cause, unreasonably dangerous health effects, Defendants continue to market, manufacture, distribute, and/or sell Paraquat products to consumers.

**ANSWER:**  Syngenta denies the allegations.

126.  Defendants knew or should have known that consumers like Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care.

**ANSWER:**  This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

127.  Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss, which Plaintiff suffered and will continue to suffer.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

128.   As a result of the foregoing acts and omissions, Plaintiff suffers from Parkinson's disease and related health issues, which are permanent and lasting in nature, physical disability, mental anguish, including diminished enjoyment of life, as well as financial expenses for hospitalization and medical care.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper.

**ANSWER:**   Syngenta denies that Plaintiff is entitled to any relief.

### Count II – Strict Products Liability (Design Defect)

129.   Plaintiff re-alleges each paragraph above as if fully set forth herein.

**ANSWER:**   Syngenta incorporates its prior responses as if fully restated herein.

130.   At all times herein mentioned, Defendants designed, researched, manufactured, tested, advertised, promoted, sold, and/or distributed Paraquat products as described above to which Plaintiff was exposed, including in the State of Illinois.

**ANSWER:**   Syngenta denies the allegations.

131.   Paraquat products were expected to and did reach the usual consumers, handlers, and persons coming into contact with it without substantial change in the condition in which they

were produced, manufactured, sold, distributed, and/or marketed by Defendants; including in the State of Illinois.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, Syngenta lacks sufficient knowledge or information to form a belief as to the allegations and therefore denies them.

132.   At those times, paraquat products were in an unsafe, defective condition that was unreasonably dangerous to users, and in particular, Plaintiff.

**ANSWER:**   Syngenta denies the allegations.

133.   For many years, Plaintiff was exposed to Defendants' Paraquat products in the State of Illinois regularly and repeatedly for hours at a time resulting in regular, repeated, and prolonged exposure of Plaintiff to Paraquat.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

134.   The Paraquat products designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed by Defendants were defective in design or formulation in that, when they left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of the Paraquat products.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due. To the extent a response is due, denied.

135.   The Paraquat products designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed by Defendants were defective in design and/or formulation, in that, when they left the hands of Defendants or their manufacturers and/or

suppliers, they were unreasonably dangerous, unreasonably dangerous in normal use, and they were more dangerous than an ordinary consumer would expect. On balance, the unreasonable risks posed by Paraquat products outweighed the benefits of their design.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due. To the extent a response is due, denied.

136.    At all relevant times, Paraquat products were in a defective condition and unsafe, and Defendants knew or had reason to know they were defective and unsafe, especially when used in the form and manner as intended by Defendants. In particular, the Paraquat products were defective in the following ways:

a.    Paraquat products were designed, manufactured, formulated, and packaged such that when so used, Paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used them, while they were being used, or entered fields or orchards where they have been sprayed or areas near where they had been sprayed; and

b.    when inhaled, ingested, or absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, Paraquat was likely to cause or contribute to cause latent, permanent, and cumulative neurological or renal damage, and repeated neurodegenerative disease, including Parkinson's disease to develop over time and manifest long after exposure.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due. To the extent a response is required, Syngenta denies the allegations.

137.    In breach of their duty to Plaintiff, Defendants acted negligently, and in conscious disregard for the safety of others:

a.    failed to design, manufacture, formulate, and package Defendants' Paraquat products to make Paraquat unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were

being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed;

b.    designed and manufactured Paraquat and designed and formulated Defendants' Paraquat products such that when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' Paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, Paraquat was likely to cause latent, cumulative, and permanent neurological or renal damage, and repeated exposures were likely to cause or contribute to cause clinically significant renal or neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure;

c.    failed to perform adequate testing to determine the extent to which exposure to Paraquat was likely to occur through inhalation, ingestion, and absorption; into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed;

d.    failed to perform adequate testing to determine the extent to which spray drift from Defendants' Paraquat products was likely to occur, including their propensity to drift, the distance they were likely to drift, and the extent to which Paraquat spray droplets were likely to enter the bodies of persons spraying Defendants' Paraquat products or nearby during or after spraying;

e.    failed to perform adequate testing to determine the extent to which Paraquat, when inhaled, ingested, or absorbed into bodies of persons who used Defendants' Paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological or renal damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant renal or neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure;

f.    failed to perform adequate testing to determine the extent to which Paraquat, when formulated or mixed with surfactants or other pesticides, and inhaled, ingested, or absorbed into the bodies of persons who used Defendants' Paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological or renal damage, and the extent to which repeated exposures were likely to cause or contribute to cause significant renal or neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure;

g.      failed to direct that Defendants' Paraquat products be used in a manner that would have made it unlikely for Paraquat to have been inhaled, ingested, or absorbed into the bodies of persons who used Defendants' Paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

h.      failed to warn that when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' Paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, Paraquat was likely to cause or contribute to cause significant renal or neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

**ANSWER:**   Syngenta denies the allegations.

138.   Defendants knew or should have known that at all relevant times that their Paraquat products were in a defective condition and were (and are) unreasonably dangerous and unsafe and would create a substantial risk of harm to persons who used them, were nearby while Paraquat products were being used, or entered fields or orchards where Paraquat products had been sprayed or areas near where Paraquat products had been sprayed.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

139.   Armed with this knowledge, Defendants voluntarily designed their Paraquat products with a dangerous condition knowing that in normal, intended use, consumers such as Plaintiff would be exposed to it.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

140.   Plaintiff was exposed to Paraquat without knowledge of Paraquat's dangerous characteristics.

49

**ANSWER**:    Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

141.    At the time of Plaintiff's exposure to Paraquat, Paraquat was being used for the purposes and in a manner normally intended, as a broad-spectrum pesticide.

**ANSWER**:    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

142.    The Paraquat products designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which it was manufactured.

**ANSWER**:    This paragraph contains legal conclusions to which no response is due. To the extent a response is due, denied.

143.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed a defective product, which created an unreasonable risk to the consumer and to Plaintiff in particular, and Defendants are therefore strictly liable for the injuries sustained by Plaintiff.

**ANSWER**:    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

144.    Plaintiff could not, by the exercise of reasonable care, have discovered Paraquat's defects herein mentioned or perceived its danger.

**ANSWER**:    This paragraph contains legal conclusions to which no response is due. To the extent a response is due, denied.

145.     Defendants are thus strictly liable to Plaintiff for the manufacturing, marketing, promoting, distribution, and/or selling of a defective product.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

146.     Defendants' defective design of Paraquat products amounts to willful, wanton, and/or reckless conduct.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

147.     As a direct and proximate result of the defects in Defendants' Paraquat products were the cause or a substantial factor in causing Plaintiff's injuries.

**ANSWER:**     Syngenta denies the allegations.

148.     As a result of the foregoing acts and omissions, Plaintiff suffered severe and personal injuries as alleged above that are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, and financial expenses for hospitalization and medical care.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper.

**ANSWER:**     Syngenta denies that Plaintiff is entitled to any relief.

## Count III – Strict Products Liability (Failure to Warn)

149.    Plaintiff re-alleges each paragraph above as if fully set forth herein.

**ANSWER:**    Syngenta incorporates its prior responses as if fully restated herein.

150.    Defendants engaged in the business of selling, testing, distributing, supplying, manufacturing, marketing, and/or promoting Paraquat in the State of Illinois, and through that conduct have knowingly and intentionally placed Paraquat into the stream of commerce with full knowledge that it reaches consumers such as Plaintiff who was exposed to it through ordinary and reasonably foreseeable uses.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, Syngenta admits that certain companies affiliated with Syngenta have manufactured, formulated, distributed, and sold paraquat for use in the United States, including the State of Illinois.  To the extent not specifically admitted herein, denied.

151.    Defendants did in fact sell, distribute, supply, manufacture, and/or promote Paraquat products. Additionally, Defendants expected the Paraquat that they were selling, distributing, supplying, manufacturing, and/or promoting to reach Plaintiff without any substantial change in the condition of the product from when it was initially distributed.

**ANSWER:**    Syngenta admits that, since approximately 2011, SCPLLC has transacted business related to pesticides in certain jurisdictions.  To the extent an individual purchased paraquat manufactured by Syngenta, Syngenta admits that its expectation was that the product would not be altered.  Syngenta lacks sufficient knowledge or information to form a belief as to the remaining allegations, and therefore denies them.

152.    At the time of manufacture, Defendants knew, or in the exercise of ordinary care, should have known that:

a.      Defendants' Paraquat products were designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of people who used it, who were nearby when it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

b.      when inhaled, ingested, or absorbed into the body, it was likely to cause latent neurological or renal damage that was both permanent and cumulative, and that repeated exposures were likely to cause renal or neurodegenerative disease, including Parkinson's disease.

**ANSWER:**    Syngenta denies the allegations.

153.    At all relevant times, Defendants' Paraquat products were in a defective condition such that it was unreasonably dangerous to those exposed to them and was so at the time they were distributed by Defendants and at the time Plaintiff was exposed to and/or ingested the product. The defective condition of Paraquat was due in part to the fact that it was not accompanied by proper warnings regarding its toxic qualities and possible health effects, including, but not limited to, developing Parkinson's disease or renal disease as a result of exposure. That defective condition was not a common propensity of the Paraquat products that would be obvious to a user of those products.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due. To the extent a response is required, denied.

154.    Defendants' Paraquat products did not contain a necessary warning or caution statement that, if complied with, would have been adequate to protect the health of those exposed in violation of 7 U.S.C. § 136j(a)(1)(E).

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

155.   Defendants failed to include a necessary warning or caution statement that, if complied with, would have been adequate to protect the health of those exposed.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied

156.   Defendants could have revised Paraquat's label to provide additional warnings.

**ANSWER:**   Syngenta denies the allegations.

157.   This defect caused serious injury to Plaintiff, who was exposed to Paraquat in its intended and foreseeable manner.

**ANSWER:**   This paragraph calls for a legal conclusion to which no response is due.   To the extent a response is due, Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

158.   At all relevant times, Defendants had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings, and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous side effects.

**ANSWER:**   This paragraph calls for legal conclusions to which no response is due.

159.   Defendants labeled, distributed, and promoted a product that was dangerous and unsafe for the use and purpose for which it was intended.

**ANSWER:**   Syngenta denies the allegations.

160.     Defendants failed to warn of the nature and scope of the health risks associated with Paraquat, namely its toxic properties and its propensity to cause or serve as a substantial contributing factor in the development of Parkinson's disease or renal disease.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

161.     Defendants knew of the probable consequences of exposure to Paraquat. Despite this fact, Defendants failed to exercise reasonable care to warn of the dangerous toxic properties and risks of developing Parkinson's disease or renal disease from Paraquat exposure, even though these risks were known or reasonably scientifically knowable at the time of distribution. Defendants willfully and deliberately failed to avoid the consequences associated with its failure to warn, and in doing so, acted with conscious disregard for Plaintiff's safety.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

162.     At the time of exposure, Plaintiff could not have reasonably discovered any defect in Paraquat through the exercise of reasonable care.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.

163.     Defendants, as manufacturers and/or distributors of Paraquat, are held to the level of knowledge of an expert in the field. There was unequal knowledge with respect to the risk of harm, and Defendants, as manufacturers of Paraquat products possessed superior knowledge and knew or should have known that harm would occur in the absence of a necessary warning.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

164.    Plaintiff reasonably relied on the skill, superior knowledge, and judgment of Defendants.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

165.    Had Defendants properly disclosed the risks associated with Paraquat, Plaintiff would have taken steps to avoid exposure to Paraquat.

**ANSWER:**    Syngenta denies the allegations.

166.    The information that Defendants provided failed to contain adequate warnings and precautions that would have enabled users to use the product safely and with adequate protection. Instead, Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of and/or exposure to Paraquat; continued to promote the efficacy of Paraquat, even after they knew or should have known of the unreasonable risks from exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Paraquat.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is required, Syngenta denies the allegations.

167.    To this day, Defendants have failed to adequately warn of the true risks of exposure to Paraquat, including the risks manifested by Plaintiff's injuries associated with exposure to Paraquat.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

168.    As a result of its inadequate warnings, Paraquat was defective and unreasonably dangerous when it left Defendants' possession and/or control, was distributed by Defendants, and when Plaintiff was exposed to it.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

169.    As a direct and proximate result, Plaintiff developed Parkinson's disease, and suffered severe and personal injuries that are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, and financial expenses for hospitalization and medical care.

**ANSWER:**    Syngenta denies the allegations.

170.    WHEREFORE, Plaintiff respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper.

**ANSWER:**    Syngenta denies that Plaintiff is entitled to any relief.

### Count IV – Public Nuisance

171.    Plaintiff re-alleges each paragraph above as if fully set forth herein.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

172.    At all relevant times, Defendants were engaged in the United States Paraquat business.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

173.    At all relevant times, Defendants intended and expected that Defendants' Paraquat products would be sold and used in the State of Illinois.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

174.    Defendants developed, registered, manufactured, distributed, and sold Paraquat for use in formulating Defendants' Paraquat products, and developed, registered, formulated, and distributed Defendants' Paraquat products for sale and use in the United States, including the State of Illinois.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

175.    For many years, Plaintiff was exposed to Defendants' Paraquat products in the State of Illinois regularly and repeatedly for hours at a time, resulting in the regular, repeated, and prolonged exposure of Plaintiff to Paraquat.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

176.    At all relevant times, Plaintiff had a right to a healthful environment while living and working in the State of Illinois.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

177.     Defendants owed a duty to those whom they could reasonably foresee were likely to use Defendants' Paraquat products or otherwise be in or near places where they were being or recently had been used within the State of Illinois, including Plaintiff and other persons, to provide and maintain a healthful environment in connection with the design, manufacture, and distribution of Paraquat for use in formulating Defendants' Paraquat products, and the design, formulation and distribution of Defendants' Paraquat products, that Defendants intended and expected to be used in the State of Illinois.

**ANSWER:**     Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

178.     When Defendants designed, manufactured, and distributed Paraquat for use in formulating Defendants' Paraquat products, and designed, formulated, packaged, labeled, and distributed Defendants' Paraquat products, it was reasonably foreseeable and in the exercise of ordinary care Defendants knew, or in the exercise of ordinary care, should have known that:

    a.     Defendants' Paraquat products were designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of people who used it, who were nearby when it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

    b.     when inhaled, ingested, or absorbed into the body, it was likely to cause latent neurological or renal damage that was both permanent and cumulative, and that repeated exposures were likely to cause renal or neurodegenerative disease, including Parkinson's disease.

**ANSWER:**     Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

179.     In doing so, Defendants created a condition that was harmful to Plaintiff's health as well as the health of the general public.

180.   **ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed.  Therefore, no response is required.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

181.    All persons living or working near fields or orchards spayed with Defendants' Paraquat products were and are affected at the same time.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

182.    An ordinary person of reasonable sensibilities would be disturbed by the condition created by Defendants' conduct.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

183.    The interference was and is unreasonable in that it involved a significant interference with public health, public safety, or public welfare.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

184.    Defendants knew or should have known their conduct would naturally or probably result in injuries to Plaintiff, but continued with their conduct in reckless disregard or conscious indifference to those consequences.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

185.    As a direct and proximate result of the nuisance created by Defendants, Plaintiff developed Parkinson's disease, and suffered severe and personal injuries that are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, and financial expenses for hospitalization and medical care.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed.  Therefore, no response is required.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper.

**ANSWER:**    Pursuant to the Court's February 14, 2022 Order, this count has been dismissed. Therefore, no response is required.

**Count V**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.)**

186.    Plaintiff incorporates by reference all of the above-stated paragraphs as though fully set forth therein.

**ANSWER:**    Syngenta incorporates by reference each allegation set forth in the preceding responses as if fully restated herein.

187.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or

omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

**ANSWER:**   Syngenta admits that aside from adding commas and several other transcription errors, including the date, this paragraph approximately quotes a portion of 815 ILCS 505/2, but Syngenta denies that Plaintiff has completely and accurately explained the terms of this provision.

188.   Defendants used, in commerce, false or misleading descriptions of fact, and/or false or misleading representations of fact, which likely or did cause confusion or mistake. Defendants misrepresented and denied the harmful side effects of their Paraquat-based products.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

189.   Defendants' false or misleading descriptions of fact, and/or false or misleading representations of fact, caused or likely caused, customer confusion regarding the safety of their Paraquat products.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

190.   Plaintiff has been and continues to be injured by Defendants' conduct.

**ANSWER:**   Syngenta denies the allegations.

191.   As a direct and proximate result of the foregoing, Plaintiff developed Parkinson's disease, and suffered severe and personal injuries that are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, and financial expenses for hospitalization and medical care.

**ANSWER:**   Syngenta denies the allegations.

192.   Plaintiff is entitled to recover costs and reasonable attorney's fees pursuant to 815 ILCS 505/10a.

**ANSWER:**   Syngenta denies that Plaintiff is entitled to any relief.

### Count VI – Breach of Implied Warranty of Merchantability

193.   Plaintiff incorporates by reference all of the above-stated paragraphs as though fully set forth therein.

**ANSWER:**   Syngenta incorporates by reference each response set forth in the preceding responses as if fully restated herein.

194.   At all relevant times, Defendants were engaged in the business of selling Paraquat products, and was a merchant with respect to those products.

**ANSWER:**   Syngenta admits that certain Syngenta entities, affiliates, and predecessors have, at different points in time, been involved in the manufacture and sale of paraquat.  To the extent not specifically admitted herein, denied.

195.   At all relevant times, Defendants intended and expected that Defendants' Paraquat products would be sold and used in the State of Illinois.

**ANSWER:**   Syngenta admits that certain Syngenta entities, affiliates, and predecessors have, at different points in time, been involved in the manufacture and sale of paraquat, including in Illinois.  To the extent not specifically admitted herein, denied.

196.   Defendants developed, manufactured, distributed, and sold Paraquat for use in formulating Defendants' Paraquat products, and developed, registered, formulated, and distributed Defendants' Paraquat products for sale in the United States, including the State of Illinois.

**ANSWER:**   Syngenta admits that certain companies affiliated with Syngenta have manufactured, formulated, distributed, and sold paraquat for use in the United States, including the State of Illinois, and has registered paraquat with the EPA and the Illinois Department of Agriculture.  To the extent not specifically admitted herein, denied.

197.    Plaintiff was exposed Defendants' Paraquat products in the State of Illinois regularly and repeatedly, for hours at a time, resulting in regular, repeated, and prolonged exposure to Paraquat.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

198.    At the time of each sale of Defendants' Paraquat products that resulted in Plaintiff's exposure to paraquat, Defendants impliedly warranted that Defendants' Paraquat products were of merchantable quality, including that they were fit for the ordinary purposes for which such goods were used.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.

199.    Defendants breached this warranty as to each sale of Defendants' Paraquat products that resulted in Plaintiff's exposure to Paraquat, in that Defendants' Paraquat products were not of merchantable quality because they were not fit for the ordinary purpose for which such goods were used by Plaintiff who was either in direct privity with Defendants through purchase of the Paraquat products or was an employee of the purchaser to whom the warranty was directly made and, therefore, an intended third- party beneficiary of such warranties.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

200.    As a direct and proximate result of the breaches of the implied warranty of merchantability by Defendants, Plaintiff developed Parkinson's disease, and suffered severe and personal injuries that are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, and financial expenses for hospitalization and medical care.

**ANSWER:**    Syngenta denies the allegations.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper.

**ANSWER:**    Syngenta denies that Plaintiff is entitled to any relief.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

**ANSWER:**    Syngenta hereby demands a trial by jury on all claims so triable.

## RESERVATION OF RIGHTS AND DEFENSES

### GENERAL DENIAL

Syngenta generally denies liability for all claims alleged in the Complaint and denies each allegation that has not been expressly admitted herein.

### INCORPORATION BY REFERENCE

Syngenta states that on February 14, 2022, the Court issued a ruling that plaintiffs failed to state claims for public nuisance and that claims without a Minnesota connection could not proceed

under Minnesota's consumer protection laws. ECF No. 954 at 25, 32-33. Syngenta hereby incorporates that ruling by reference.

## DEFENSES AND AFFIRMATIVE DEFENSES

Syngenta generally denies liability for all claims alleged in the Complaint and denies each allegation that has not been expressly admitted herein. By including these defenses in this Answer, Syngenta is not assuming the burden of proof on any such defense and is not conceding that Syngenta bears any burden of proof on these defenses, except as required by law. Syngenta reserves the right to assert additional defenses or otherwise supplement this Answer upon discovery of additional facts or evidence.

## CHOICE OF LAW

For purposes of the affirmative defenses, Syngenta applies the law of Illinois. To the extent the Court determines that a different state's law applies to all or some of these defenses, Syngenta hereby applies the law of that state (or states).

## FIRST AFFIRMATIVE DEFENSE
### (Any Liability Attributable to Plaintiff or Others)

If there is any negligence or liability of any of the parties named herein, it is the sole and exclusive negligence and liability of the other entities or individuals, and not of Syngenta.

## SECOND AFFIRMATIVE DEFENSE
### (Failure to State a Cause of Action)

The Complaint, and each cause of action therein, fails to state facts sufficient to constitute a cause of action upon which relief may be granted.

## THIRD AFFIRMATIVE DEFENSE
### (No Personal Jurisdiction)

To the extent that Plaintiff's alleged injuries arise out of or relate to Syngenta's alleged activities outside the State of Illinois, the Court lacks personal jurisdiction over Syngenta.

## FOURTH AFFIRMATIVE DEFENSE
### (EPA Has Primary Jurisdiction)

Plaintiff's claims are barred because the Environmental Protection Agency has primary jurisdiction over Plaintiff's claims under FIFRA, 7 U.S.C. § 136 et seq., which vests the EPA with authority to regulate labeling and packaging requirements for herbicides, including paraquat.

## FIFTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Plaintiff's claims are barred in whole or in part by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 735 Ill. Comp. Stat. Ann. 5/13-202, 5/13-203, 810 Ill. Comp. Stat. Ann. 5/2-725, and 815 Ill. Comp. Stat. Ann. 505/10a(e).

## SIXTH AFFIRMATIVE DEFENSE
### (Statute of Repose)

Plaintiff's claims are barred in whole or in part by the applicable provisions of the pertinent statutes of repose including but not limited to, 735 Ill. Comp. Stat. Ann. 5/13-213.

## SEVENTH AFFIRMATIVE DEFENSE
### (Federal Preemption)

Plaintiff's claims against Syngenta are barred, in whole or in part, by the Supremacy Clause, Article VI, Section 2, of the United States Constitution, because those claims are preempted by federal law, including but not limited to the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 et seq. ("FIFRA"), because they seek to impose "requirements for labeling and packaging in addition to or different from those required" under FIFRA 7 U.S.C. § 136vb.

## EIGHTH AFFIRMATIVE DEFENSE
### (Conflict Preemption)

Plaintiff's claims against Syngenta are barred, in whole or in part, by the doctrine of conflict preemption because Plaintiff's claims "stand[ ] as an obstacle to the accomplishment and

execution of the full purpose and objectives of Congress" under FIFRA. *Grier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2002).

### NINTH AFFIRMATIVE DEFENSE
### (Compliance with FIFRA)

The conduct of Syngenta, and the characteristics and other properties of paraquat-containing products sold by Syngenta (including the labels and warnings for paraquat-containing products) at all times complied with FIFRA, its implementing regulations, and other mandates imposed by the United States Department of Agriculture ("USDA") and the Environmental Protection Agency ("EPA") with respect to pesticides. 7 U.S.C. § 136 et seq.

### TENTH AFFIRMATIVE DEFENSE
### (ICFA Claims)

Plaintiff's claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. Ann. 505/1 et seq. are barred because the ICFA does not apply to personal injury claims or loss of consortium claims, *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009); *Cooney v. Chi. Pub. Sch.*, 943 N.E.2d 23, 31 (Ill. App. Ct. 2010), and because they are unconstitutional under the Freedom of Speech Clause of the First Amendment of the U.S. Constitution, *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786 (2011).

### ELEVENTH AFFIRMATIVE DEFENSE
### (Compliance with Standards of Care and Regulations; Products Not Defective)

Plaintiff's claims must be dismissed because Syngenta's paraquat-containing products were properly manufactured, marketed, and distributed, were not defective in any manner, were at all relevant times reasonably fit and suited for the purpose for which they were manufactured, and were delivered with sufficient advice and warnings that were consistent with the state of the existing scientific, medical, technological, and industrial knowledge. Syngenta complied with all

applicable government standards and regulations and all applicable standards of care under all laws, regulations, industry practice, and state-of-the-art knowledge.

### TWELFTH AFFIRMATIVE DEFENSE
### (No Causation and/or Proximate Causation)

Plaintiff's claims are barred because Plaintiff's alleged injuries and damages, which injuries and damages at all times are denied, were not legally or proximately caused by any acts or omissions by Syngenta and/or were caused, if at all and to the extent such causation can even be identified, by the conduct of Plaintiff himself, third parties over which Syngenta had no authority or control, and/or events and conditions wholly unrelated to Syngenta. Syngenta cannot be held liable for loss or damage caused by such independent persons or entities, whether or not they are parties to this action.

### THIRTEENTH AFFIRMATIVE DEFENSE
### (Good Faith)

Any and all actions taken by Syngenta with respect to any of the matters alleged in the Complaint were taken in good faith and in accordance with established practice.

### FOURTEENTH AFFIRMATIVE DEFENSE
### (Due Care)

Plaintiff's claims are barred, in whole or in part, because Syngenta exercised due care and took appropriate precautions against any reasonably foreseeable acts or omissions of third parties and any reasonably foreseeable consequences of such acts or omissions.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (No Duty to Warn)

Syngenta had no duty to warn Plaintiff of any risks attendant to the use or application of its products beyond those requiring disclosure by the EPA and/or any other federal laws or regulations, and specifically denies it had any duty to warn of the alleged risks identified by

Plaintiff in the Complaint or that such risks exist or existed. Syngenta is entitled to rely upon knowledgeable, learned and sophisticated market intermediaries, suppliers and applicators to pass on necessary warnings, if any.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Plaintiff's Fault or Negligence)

In the event that Plaintiff establishes liability on the part of Syngenta, which liability is specifically denied, Syngenta avers that any injury or damages alleged in the Complaint were caused by the contributory or comparative negligence and/or fault of Plaintiff, thereby barring Plaintiff' recovery in whole or in part.

### SEVENTEENTH AFFIRMATIVE DEFENSE
### (Assumption of Risk)

Plaintiff assumed the risk of or consented to any injury or damages alleged in the Complaint, thereby barring any recovery in whole or in part by Plaintiff herein.

### EIGHTEENTH AFFIRMATIVE DEFENSE
### (Awareness of Product's Condition)

If the product allegedly involved in this action was defective or unreasonably dangerous, which Syngenta expressly denies, Plaintiff was aware thereof and unreasonably proceeded to make use of the product in that condition.

### NINETEENTH AFFIRMATIVE DEFENSE
### (Misuse, Abuse, or Alteration of Products)

There can be no liability against Syngenta to the extent Plaintiff's alleged damages were caused by a misuse, abuse, and/or alteration of any Syngenta product, or the failure to act in accordance with the labels and directions provided by Syngenta and/or others.

### TWENTIETH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

Plaintiff's claims are barred in whole or in part because Plaintiff failed to mitigate his alleged injuries and damages, or both.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Waiver, Estoppel, Laches, Unclean Hands)

Plaintiff's claims are barred, in whole or in part, based on the equitable doctrines of waiver, estoppel, laches, unclean hands, and/or *in pari declicto*.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Unjust Enrichment)

Plaintiff's claims against Syngenta for damages are barred, in whole or in part, because Plaintiff would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Consequential, Special, Indirect or Incidental Damages)

Plaintiff's claims are barred, in whole or in part, by Syngenta's disclaimer language, including, but not limited to, disclaimer language on its product label(s).

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Speculative Damages)

Plaintiff's claims are barred, in whole or in part, because Plaintiff's damages are legally uncertain, remote, indirect, and/or speculative.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (No Right/Entitlement to Attorneys' Fees)

Plaintiff fails to state a claim upon which attorneys' fees may be awarded.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Several Liability)

Plaintiff is barred from recovery to the extent his own negligence contributed to his alleged injuries and damages in an amount more than fifty-percent (50%), as dictated by 735 Ill. Comp.

Stat. Ann. § 5/2-1116.  To the extent plaintiff's negligence contributed to his own alleged injuries and damages in an amount of fifty percent (50%) or less, any recovery should be reduced to an amount equal to the share of the injuries and damages attributable to the comparative fault and/or negligence of Plaintiff on those counts applicable to each.  *Id*.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### (Contribution, Indemnity, and Offset)

Syngenta reserves all rights of contribution and/or indemnity and for the apportionment of fault against Plaintiff and any other persons or entities to the fullest extent permitted. Syngenta expressly reserves the right, in the event that one or both Plaintiff settle with other persons or entities, to seek a credit or offset for any portion of any Plaintiff's alleged injuries that may be attributed to such other persons or entities. Syngenta is entitled to offset against any judgment entered against it of all amounts recovered by or benefiting Plaintiff, and resulting from any settlement, judgment or any other basis permitted by law.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
### (Punitive Damages)

To the extent Plaintiff seeks punitive and/or exemplary damages, Plaintiff is barred from recovering punitive and/or exemplary damages because Plaintiff fails to state facts sufficient to state a claim for punitive and/or exemplary damages and Syngenta committed no acts justifying an award of punitive and/or exemplary damages.

## TWENTY-NINTH AFFIRMATIVE DEFENSE
### (Statutory Limitations on Recovery)

Any damages recovered by Plaintiff from Syngenta must be limited by the applicable statutory ceilings on recoverable damages.

## RESERVATION OF RIGHTS AND DEFENSES

Syngenta's pleading is based on its reasonable investigation of Plaintiff's claims to date. Syngenta has not knowingly or intentionally waived any applicable defenses and reserves the right to assert and rely on such other applicable defenses as may become available or apparent during discovery proceedings. Syngenta reserves the right to amend its Answer and/or Affirmative Defenses accordingly, and/or withdraw Affirmative Defenses that it determines to be inapplicable during the course of subsequent discovery. Additionally, Syngenta reserves its rights regarding preemption, which it has contested.

Dated: April 13, 2022                    Respectfully submitted,

*/s/ Ragan Naresh*
Ragan Naresh
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
ragan.naresh@kirkland.com

Leslie Smith
Brad Weidenhammer
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2000
leslie.smith@kirkland.com
bweidenhammer@kirkland.com

*Attorneys for Syngenta Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 13, 2022, I electronically filed the foregoing with the Clerk of this

Court by using the CM/ECF system, which will provide notice to all users of record.

*/s/ Ragan Naresh*
Ragan Naresh